UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
JAMES PAYNE,

               Petitioner,

    -against-

THE PEOPLE OF THE STATE OF NEW YORK,[1]

               Respondent.
-----------------------------------------------------------------------X

<u>For Online Publication Only</u>

**<u>ORDER</u>**
20-cv-05899 (JMA)
21-cv-03547 (JMA)
22-cv-02374 (JMA)

**FILED**
**CLERK**

2:59 pm, Aug 09, 2022

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

**AZRACK, United States District Judge:**

    This Order resolves three (3) pending petitions for habeas corpus relief filed by <u>pro se</u> Petitioner James Payne ("Petitioner" or "Payne") pursuant to 28 U.S.C. § 2254.

    On December 3, 2020, Payne filed a petition for a writ of habeas corpus (The "First Petition"), asserting that New York state courts erred in denying his motion that sought pending his appeal of his 2019 convictions in state court.  ("First Pet."), 20-cv-05899, ECF No. 1.)  On June 17, 2021, Payne filed a second petition seeking a writ of coram nobis (the "Second Petition"), to vacate a 2012 state court criminal conviction, on the grounds that he was "actually innocent" and was denied effective assistance of counsel.  ("Second Pet.," 21-cv-03547, ECF No. 1.)  Thereafter, on April 21, 2022, Payne filed a third petition for federal habeas relief (the "Third Petition"), challenging another of his state court criminal convictions, which occurred in 2009.  ("Third Pet.," 22-cv-02374, ECF No. 1.)  Here, too, Payne makes similar claims that he is "actually innocent" of that crime, that his guilty plea was not knowing, voluntary, and intelligent, and that

---

[1] The Court notes that "McIntosh" is the named Defendant/Respondent in 20-cv-05899 action.  However, for the purposes of habeas corpus relief sought in Petitioner's claim, the matter is not material.

his counsel was ineffective.  (Id.)  The use of the 2009 and 2012 convictions to enhance Payne's sentence for his 2019 convictions is what apparently led Payne to challenge those older convictions now, years after they became final.

The State of New York (hereafter, "Respondent") opposes each Petition and has moved to dismiss on various grounds including timeliness, lack of subject jurisdiction, and/or failure to exhaust state remedies.  ("Govt's MTD," 20-cv-05899, ECF No. 6; 21-cv-03547, ECF No. 9; 22-cv-02374, No. 7.)  For the reasons stated below, all three petitions are DENIED.

## I.  BACKGROUND

The Court assumes the parties' familiarity with the full facts and procedural history of this action and summarizes only the facts and history relevant to resolve the pending petitions.

### A.  The First Petition[2]

Payne's First Petition seeks federal habeas corpus relief on the ground that his federal constitutional rights were violated based on multiple state court decisions that denied his motion for bail pending appeal.

On May 13, 2019, Payne pled guilty to eight counts of criminal sale of a controlled substance in the third-degree (Indictment 997N-2017), grand larceny in the fourth-degree (Indictment 87N-2019), and perjury in the first-degree.  (State Court Record, ECF No. 4 at 45-58.)  On June 20, 2019, on both indictments, Payne was sentenced a determinate term of seven years and three years of post-release supervision on each count to run concurrently.  (ECF No. 4 at 38.)

On July 16, 2019, Payne filed an appeal with respect to his convictions on both Indictments 997N-2017 and 87N-2019.  (ECF No. 4-7 at 54-55.)  The Second Department consolidated the appeals.  (ECF No. 4-7 at 38.)

---

[2] Unless otherwise noted, in discussing the First Petition, the Court's citations are to the docket in 20-cv-05899.

On January 10, 2020, Payne then moved pursuant to New York State Criminal Procedure Law ("CPL") § 460.50 for a stay of his sentence and to be released pending his appeal on the basis that he was denied assistance of counsel and had been wrongfully permitted to proceed pro se. (ECF No. 4-2.) Respondent opposed Payne's motion arguing that he was a serious flight risk and failed to satisfy the necessary factors. (ECF No. 4-7 at 90.) On March 9, 2020, the Second Department summarily denied Payne's bail motion. (ECF No. 4-5.)

In April 2020, Payne then filed a petition for a writ of habeas corpus in the Appellate Division, Third Department seeking to be released on bail pending his direct appeal of his conviction. (ECF No. 4-6 at 2.) In his appeal to the Third Department, Payne claimed that the Second Department had improperly denied his motion for a stay and bail pending appeal without providing a reason and that he was being unconstitutionally held in violation of his Eighth and Fourteenth Amendment rights. (ECF No. 4-1 at 9-10.) He reiterated his claim that his pending appeal had merit and would be based on Sixth Amendment violations, due process violation, and jurisdictional defects. (Id.) On June 4, 2020, the Third Department summarily denied Payne's petition. (ECF No. 4-7 at 31.)

On June 18, 2020, Payne sought leave to appeal to the New York Court of Appeals from the denial of habeas corpus petition by the Third Department. (ECF No. 4-7.) He asserted that the Third Department had no reason to deny his petition and wrongfully failed to set forth the basis for the denial in its decision. (ECF No. 4-7 at 7.) He further added that the Second Department did not have a reason to deny his motion for bail and denied him due process, stating that the court lacked discretion to deny the motion. (ECF No. 4-7 at 11-12.) In particular, he asserted that the Second Department's failure to comply with CPL §§ 460.50, 510.30, and 530.50 violated both his federal and state constitutional rights. (Id.) The New York Court of Appeals summarily denied

Payne's request on November 19, 2020.  (ECF No. 4-11.)

Separately, during the pendency of his Third Department appeal, Payne had filed another habeas corpus petition on April 29, 2020 in Supreme Court, Franklin County. (ECF No. 4 at 44-53.)  In this petition, like the others, Payne also alleged violations of the Eighth and Fourteenth Amendments, due process, and the New York Constitution. (Id. at 47.)  Payne also alleged that the conditions at the Bare Hill Correctional Facility during the COVID-19 pandemic put his health at risk, in violation of his constitutional rights.  (Id. at 48.)  The court denied Payne's petition on May 22, 2020.  Payne appealed this denial to the Third Department.  (Id. at 94.)

During the pendency of his appeal to the Third Department, Payne filed the First Petition before this Court seeking federal habeas corpus relief regarding the denial of his motion for bail pending appeal in the Second Department.  (First Pet., ECF No. 1.)  On March 5, 2021, Respondent opposed the First Petition, arguing that Payne's claim is not cognizable on federal review and that Payne's claim was not exhausted (and is now procedurally barred) because Payne failed to raise his constitutional argument before the Second Department.  (Gov't MTD, ECF No. 6.)  On March 31, 2021, Payne filed a reply to Respondent's opposition reiterating his claims and advising the Court that his early release date was June 5, 2022, but that he has a pending state court appeal that he had yet to perfect.  (ECF No. 7.)

**B.  The Second Petition[3]**

Payne's Second Petition seeks a writ of error coram nobis on the grounds that:  (1) his conviction was obtained by fraud or misrepresentation by the prosecution; (2) that he was denied the effective assistance of counsel; (3) that he is innocent; and (4) and that the state court's denial of his motion to vacate was contrary to federal law and United States Supreme Court precedent.

---

[3] Unless otherwise noted, in discussing the Second Petition, the Court's citations are to the docket in 21-cv-03547 (the "Second Petition").

4

(Second Pet., ECF No. 1.)

The Second Petition stems from an arrest in September 2011 where he was subsequently charged with one count of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the first degree.  (Aff. of Monica Leiter dated Dec. 2, 2021 ("First Leiter Aff.") ¶ 5, ECF No. 9.)  Pursuant to the terms of a bargained-for plea agreement, Petitioner pled guilty on February 15, 2012 to attempted criminal sale of a controlled substance in the fifth degree in satisfaction of all the charges against him and waived his right to appeal.  (Id. ¶ 8; ECF No. 11-1 at 39-49.)  Thereafter, Payne did not file a notice of appeal within the thirty days prescribed by CPL section 460.l0(l)(a).  Payne also did not seek leave to file a late appeal within the year allowed by CPL § 460.30.  (First Leiter Aff. ¶ 9.)

For this conviction, Payne was sentenced to two years of incarceration and two years of supervised release.  (Id. ¶ 8.)  After his release on June 3, 2013, Payne's parole was revoked twice and he ended up serving the remainder of this sentence in prison.  (Id. ¶ 10.)  On November 27, 2015, Payne was released from incarceration having served his maximum sentence for this conviction.  (Id.)

On October 13, 2019, Payne sought leave from the Appellate Division, Second Department to appeal his conviction.  (Id. at ¶ 11)  The Second Department ordered him to show cause why the appeal should not be dismissed because it was untimely.  (Id.)  On March 2, 2020, the Second Department dismissed the appeal as untimely.  (Id.)

In September 2020, Payne filed a motion in Nassau County Supreme Court pursuant to CPL § 440.10 to vacate his criminal conviction.  (ECF No. 11-1 at 5.)  Payne asserted that his conviction was obtained by fraud or misrepresentation by the prosecution, that he was denied the effective assistance of counsel, and that he was "actually innocent."  (Id.)  Payne's motion was

denied on January 29, 2021 and Payne's appeal of that decision was denied on May 2021 by the Second Department.  (Id.)

On June 12, 2021, Petitioner filed a petition for a writ of error coram nobis with this Court pursuant to 28 U.S.C. § 1651.  (See generally, Second Pet.)  Payne's Second Petition asserts that: (1) his 2012 conviction was obtained by fraud or misrepresentation by the prosecution; (2) that he was denied the effective assistance of counsel; (3) that he is innocent; and (4) that the state court's denial of his motion to vacate was contrary to federal law and United States Supreme Court precedent.  (Id.)

On December 2, 2021, Respondent filed a motion to dismiss the Second Petition.  (ECF No. 9.)  In the motion to dismiss, Respondent asserts that Payne is not eligible for federal coram nobis relief, that he fails to meet the in-custody requirement for federal habeas relief, and that in, any event, the Second Petition is untimely.  On January 26, 2022, Payne filed a reply to the motion to dismiss.  (ECF No. 11.)

## C.  <u>The Third Petition</u>[4]

Payne's Third Petition challenges a 2009 conviction.  (See Third Pet., ECF No. 1.)

On January 27, 2009, Payne pled guilty to one count of second-degree robbery.  (Third Pet. at 4.)  On March 9, 2009, Petitioner was sentenced to two-and-one-half years' incarceration to be followed by two years' post-release supervision.  (Aff. of Monice Leiter dated June 7, 2022 ("Second Leiter Aff.") ¶ 8, ECF No. 7.)  The record before the Court does not indicate that Payne filed an appeal for this 2009 second-degree robbery conviction.

On May 31, 2021, Payne filed a motion to vacate this 2009 conviction pursuant to CPL § 440.10 on the grounds that he was innocent, his plea was induced by fraud and misrepresentations

---

[4]  Unless otherwise noted, in discussing the Third Petition, the Court's citations are to the docket in 22-cv-02374 (the "Third Petition").

by the prosecution, and that he received ineffective assistance of counsel.  (Id. ¶ 10-11.)  On October 29, 2021, Justice William J. O'Brien, of the Nassau County Supreme Court, denied Payne's motion.  (Third Pet., Ex. 3.)  On November 17, 2021, Payne sought leave from the Appellate Division, Second Department, to appeal the denial of his motion.  Payne claimed, on appeal, that the court below had erred by denying his motion without a hearing.  (Second Leiter Aff. ¶ 10–11.)  The Second Department denied Payne's application for leave on January 7, 2022.  (Id.)

On April 11, 2022, Payne filed the Third Petition before this Court seeking habeas corpus relief from the March 9, 2009, judgment of conviction.  (Third Pet.)  In his petition, Petitioner alleges that: (1) his guilty plea for the 2009 conviction was not knowing, voluntary, and intelligent because he was "actually innocent"; (2) the prosecutor committed fraud and engaged in misrepresentation; and (3) his counsel was ineffective.  (Id.)  He also asserts that state court's denial of his § 440.10 motion without holding a hearing was contrary to United States Supreme Court precedent and federal law.  (Id.)

On June 7, 2022, Respondent filed a motion to dismiss Payne's Third Petition.  (ECF No. 7.)  Respondent argues that the Third Petition is time-barred and Payne fails to meet the "in custody" requirement for habeas relief.  (Id.)

Payne did not file a response to the motion to dismiss.

## II.  DISCUSSION

### A.  Legal Standards

#### 1.  Overview of AEDPA

Congress enacted the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104–132, 110 Stat. 1214 (1996), to restrict "the power of federal courts to grant writs of habeas

corpus to state prisoners." Williams v. Taylor, 529 U.S. 362, 399 (2000) (O'Connor, J., concurring). Under AEDPA, a prisoner may file a habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). To make that showing, the petitioner must demonstrate: (1) the exhaustion of state remedies, (2) the absence of a procedural bar, and (3) the satisfaction of AEDPA's deferential review of state court decisions. See id. § 2254.

If a state court reached the merits of a claim, a federal court may not grant a writ of habeas corpus unless the state court's adjudication of the claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). The Supreme Court has construed AEDPA "to give independent meaning to 'contrary [to]' and 'unreasonable.'" Jones v. Stinson, 229 F.3d 112, 119 (2d Cir. 2000).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412–13 (O'Connor, J., concurring). A decision involves "an unreasonable application" of clearly established federal law when a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Id. at 413. This standard does not require that all reasonable jurists agree that the state court was wrong. Id. at 409–10. Rather, the standard "falls somewhere between 'merely erroneous and unreasonable to all reasonable jurists.'" Jones, 229 F.3d at 119 (quoting Francis S. v. Stone, 221 F.3d 100, 109 (2d

Cir. 2000)).

AEDPA "'imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt.'" Jones v. Murphy, 694 F.3d 225, 234 (2d Cir. 2012) (quoting Hardy v. Cross, 565 U.S. 65, 66 (2011) (per curiam)).  This standard is "difficult to meet," and for good reason.  White v. Woodall, 572 U.S. 415, 419 (2014) (quoting Metrish v. Lancaster, 569 U.S. 351, 357–58 (2013)), reh'g denied, 573 U.S. 927 (2014). A petitioner must show that the "state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  Id. at 419–20.

Furthermore, a state court's determinations of factual issues are "presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see also Lynn v. Bliden, 443 F.3d 238, 246 (2d Cir. 2006).  A state court's findings of fact will be upheld "unless objectively unreasonable in light of the evidence presented in the state court proceeding."  Lynn, 443 F.3d at 246–47 (quoting Miller-El v. Cockrell, 537 U.S. 322, 340 (2003)). Thus, a federal court may overrule a state court's judgment only if "after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated."  Williams, 529 U.S. at 389.

### 2.  Pro Se Status

A petitioner "bears the burden of proving by a preponderance of the evidence that his constitutional rights have been violated." Jones v. Vacco, 126 F.3d 408, 415 (2d Cir. 1997). However, in light of Petitioner's pro se status, the Court construes his submissions liberally and interprets them "'to raise the strongest arguments that they suggest.'" Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir. 2014) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

This liberal interpretation of the petition "'does not exempt a party from compliance with relevant rules of procedural and substantive law.'" Traguth v. Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (quoting Birl v. Estelle, 660 F.2d 592, 593 (5th Cir. 1981)).

**B.  The First Petition Appears to Be Moot and is Also Meritless**

The First Petition is premised on the denial of Payne's serial motions in state court seeking a stay of judgment and bail pending appeal of certain convictions.  (See generally First Pet.)

Payne argues, inter alia, that the state courts arbitrarily denied his motions "without reason" and "without a hearing" in violation of state laws governing bail proceedings, "Due Process," and his Eighth and Fourteenth Amendment rights.  (First Pet. at 5-6.)  The Court finds that Payne's First Petition must be dismissed because it does not state a cognizable federal habeas claim. Moreover, Payne's First Petition also appears to be moot given that public records indicate Payne has already been released from prison.[5]

**1.  Mootness**

Payne's First Petition appears to be moot, because according to the publicly available records of New York State Department of Corrections and Community Supervision ("DOCCS"), Payne's assigned New York State Identification Numbers (or "NYSID"): 09A1571, 12A1788, and 19A2651 each indicate a status of "RELEASED" or "DISCHARGED."[6] The corresponding identification numbers and biographical information match what Payne provided in his

---

[5]  Respondent also argues that Payne's First Petition was not exhausted, it is unnecessary to reach that issue because the Petition appear to be moot and is also plainly meritless.

[6]  See New York State DOCCS "Incarcerated Lookup" available at https://nysdoccslookup.doccs.ny.gov/. The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information.  See Johnson v. City of New York, No. 15-CV-8195, 2017 WL 2312924, at *2 n.3 (S.D.N.Y. May 26, 2017) (collecting cases).

submissions to this Court.[7]   The record for NYSID 19A2651—which concerns Payne's 2019 convictions that were the subject of the bail motion—indicates that he was released on parole on June 2, 2022.  Accordingly, because Payne previously sought to be released on bail, and has now been released, he no longer has a redressable injury.  See Watson v. Orsino, No. 13cv1631, 2013 WL 4780033, at *1 (S.D.N.Y. May 31, 2013) (dismissing habeas petition as moot where petitioner sought release as relief); see also Pierrilus v. U.S. Immigration & Customs Enforcement, 293 F. App'x 78, 79 (2d Cir. 2008) (summary order) (holding that a petitioner's challenge to the length of his detention was moot because the petitioner was released from custody).

Accordingly, Payne's First Petition must be dismissed.

### 2.  The First Petition Fails on the Merits

The First Petition clearly fails on the merits.  "[T]here is no federal right to bail pending appeal after a conviction in the state courts."  Rodriguez v. McAuliffe, No. 21-CV-06543, 2022 WL 2193467, at *4 (E.D.N.Y. June 17, 2022) (citing Brown v. Wilmot, 572 F.2d 404, 405 (2d Cir. 1978)).  Rather, federal habeas review is restricted to the "constitutionality of a petitioner's detention, not of the adjudication of a discretionary application for temporary bail and stay of proceedings."  Rodriguez, 2022 WL 2193467, at *4 (E.D.N.Y. June 17, 2022) (citing Garson v. Perlman, 541 F. Supp. 2d 515, 527 (E.D.N.Y. 2008) (claimed violations of "state criminal procedural and substantive statutes" do not give rise to federal habeas claims)).  As such, Payne's claims that the state court decisions denying bail violated his federal constitutional rights are denied.  See Mitchell v. Ward, 409 F. Supp. 3d 117, 120-21, 124 (E.D.N.Y. 2017) ("the state procedural right granted by § 460.50—to apply for a stay of the execution of a judgment pending

---

[7] The corresponding convictions and biographical information listed in DOCC's public records all match the information provided by Payne in his three pending petitions before this Court.  (See, e.g., 20-cv-05899, ECF No. 4 at 86 listing Payne's birth and NYSID of "19A2651.")

determination of an appeal and to be released or have bail set in the interim—does not involve any such fundamental interest protected by the Due Process Clause.").

To the extent the First Petition asserts that the denial of Payne's request for bail pending appeal was contrary to New York state law, such claims cannot be pursued in a federal habeas petition. The Supreme Court has made clear that "federal habeas corpus relief does not lie for errors of state law." Wilson v. Corcoran, 562 U.S. 1, 5, 131 S. Ct. 13, 178 L. Ed. 2d 276 (2010) (per curiam) (internal quotation marks omitted); see also Garson v. Perlman, 541 F. Supp. 2d 515, 527 (E.D.N.Y. 2008) (claimed violations of "state criminal procedural and substantive statutes" do not give rise to federal habeas claims). Accordingly, Payne's claims that the decisions of the state courts denying him bail were contrary to state law are not cognizable on federal habeas review. See Mitchell, 409 F. Supp. 3d 117, 120-21, 124; Welch v. Artus, No. 04–CV–205, 2007 WL 949652, at *39 (W.D.N.Y. Mar. 29, 2007) (holding that violations of the New York CPL "[are] not cognizable on habeas review"). Accordingly, even if Payne's First Petition were not moot, it would be denied on the merits.

## C. The Second Petition Must be Denied

Although the Second Petition is styled as a petition for writ of error coram nobis, the Court will, given Payne's pro se status, liberally construe the Second Petition as a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Payne has consented to the Court construing the Second Petition as a habeas petition under § 2254.

Payne's Second Petition must be denied as he fails to meet the threshold "in-custody" requirement and, regardless, his petition is untimely. As explained below, Payne argues, inter alia, that he has established that he is actually innocent and, thus, qualifies for exceptions to the in-custody requirement and to AEDPA's one-year statute of limitations. All of Payne's arguments—

including his actual innocence claim—are patently meritless.

### 1. Background

The Second Petition concerns Payne's 2012 conviction for attempted criminal sale of a controlled substance.  (ECF No. 11-1 at 5.)  Payne's 2012 conviction stemmed from Payne's arrest in September 2011.  (First Leiter Aff. ¶ 5.)  Payne was charged with one count of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the first degree.  (Id.)  Pursuant to the terms of a negotiated plea agreement, Petitioner pled guilty in 2012 to attempted criminal sale of a controlled substance in the fifth degree in satisfaction of all the charges and was sentenced to two years in prison followed by two years of post-release supervision.  (First Leiter Aff. ¶¶ 8, 10.)  Thereafter, Payne never sought to directly appeal this conviction.

The sale at issue was captured on audio and videotape.  (First Leiter Aff. ¶ 7.)  On December 14, 2011, prior to the guilty plea, Petitioner's attorney viewed the video recording of the drug sale at the Nassau County District Attorney's Office.  (Id.)  Defense counsel was also provided with a still photograph that was extracted from the video depicting Petitioner engaged in the drug sale.  (Id.)

In February 2011, the Nassau County Police Department's crime lab had been closed due to concerns about the integrity of tests performed at the lab.  (See ECF No. 1-1 at 42–225.)  Because of this closure—which occurred more than six months before Payne's September 2011 arrest—the substances at issue in Payne's case were submitted to an outside laboratory, National Medical Services Labs ("NMS") in Pennsylvania, for testing.  (ECF No. 11-1 at 36.)  Laboratory testing conducted by NMS on January 24, 2012, found that these substances consisted of cocaine.  (Id.)  One of the packages of cocaine weighed 11.60 grams and the other weighed 2.91 grams.  (Id.)

The closure of the Nassau County crime lab resulted in an investigation by the New York State Inspector General, which issued a lengthy public report in November 2011 about the lab's problems and the ultimate shuttering of the lab.  (ECF No. 1-1 at 42–225.)

In his Second Petition, Payne reasons that because the Nassau County crime lab had been closed when he was arrested, the substances at issue in his case were, in fact, never tested and, thus, the prosecution actually had no evidence that these substances were actually cocaine. (Second Pet. ¶¶ 28, 47.)   Payne's Second Petition says nothing about the January 2012 test performed by NMS.

In response to the motion to dismiss the Second Petition—which included a copy of the January 2012 test performed by NMS—Payne claims, in his reply papers, that the NMS test results are, actually, not proof of his guilt because:  (1) the NMS test results are, somehow, not connected to the charge for which he pled guilty; and (2) the specific tests performed by NMS are insufficient, under New York law, to prove that the substances at issue were cocaine.  (ECF No. 11.)

Payne's Second Petition does not squarely state when he first learned of the crime lab's closure.  Payne generally claims that he "had no knowledge of the proof of the miscarriage of justice."  (Second Pet. ¶ 59.)

At some point, Payne submitted a FOIL request to the Nassau County District Attorney's Office about his 2012 conviction.  (Id. ¶ 18.)  He received a response to this request in September 2020.[8]  (Id.)  Payne does not identify what this response contained.  At some point after receiving this response, Payne obtained the 2011 Inspector General's report from a Google search.  (Id. ¶ 60.)   According to Payne, he performed this Google search after receiving unspecified

---

[8] Payne's petition strongly suggests that he only filed this FOIL request after he was sentenced in June 2019 for his 2019 conviction and his prior convictions, including his 2012 conviction, were relied on to enhance his sentence for his 2019 conviction.

"information from F.O.I.L. and other [unspecified] outlets."  (Id.)

Payne claims that, after obtaining the Inspector General's report, he wrote to the clerk of the Nassau County Court seeking information about his 2012 criminal case.  (Second Pet. ¶ 19; Second Pet., Ex. 8.)  He received a response on June 23, 2020, which indicated that defense counsel did not file any demand for discovery or any request for a private investigator.[9]  (Pet., Ex. 8.)

Payne's claims are both factually and legally absurd, and do not preclude the dismissal of his petition on the grounds that: (1) he is no longer in custody on this conviction; and (2) the Second Petition is untimely.

**2.  Petitioner Does Not Meet the In-Custody Requirement**

The Second Petition must be dismissed because Payne is not "in custody" pursuant to his 2012 conviction for attempted criminal sale of a controlled substance.  His sentence for that conviction has fully expired.  It is well-settled that a district court may only entertain an application for a writ of habeas corpus where the petitioner is "in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a) (emphasis added).  This statutory language requires that the habeas petitioner be in custody under the conviction or sentence under attack at the time his petition is filed. See Maleng v. Cook, 490 U.S. 488, 490–91 (1989).

Payne argues that he nevertheless meets the in-custody requirement because this 2012 conviction was subsequently used to enhance the sentences he received for his more recent convictions in 2017.  (Second Pet. ¶ 57.)  This argument is meritless.  As the Supreme Court has

---

[9]  The timeline of events set out in Payne's Second Petition appears to be contradicted by the Clerk's response dated June 23, 2020—which, according to the Second Petition, would be before Payne received a response to FOIL request and before he allegedly obtained the Inspector General's report.  It is unnecessary to resolve these contradictions because, under any possible interpretation of the timing of these events, it is clear that the Second Petition must be dismissed.

held:

> [O]nce a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid.  If that conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under § 2254 on the ground that the prior conviction was unconstitutionally obtained.

Lackawanna Cnty. Dist. Att'y v. Coss, 532 U.S. 394, 403–04 (2001) (citation omitted); see also Calaff v. Capra, 714 F. App'x 47, 49 (2d Cir. 2017).

While there are two potential exceptions to this rule, Payne qualifies for neither exception. The first exception applies if the "the prior conviction used to enhance the sentence was obtained" involved a "failure to appoint counsel in violation of the Sixth Amendment, as set forth in Gideon v. Wainwright, 372 U.S. 335, [] (1963)."  Lackawanna Cnty. Dist. Att'y, 532 U.S. 394 at 404. There was, however, no failure to appoint counsel here as Payne was represented by counsel in connection with his 2012 conviction.   While Payne argues that this exception encompasses instances of ineffective assistance of counsel, this narrow exception does not apply to ineffective assistance claims.  See Lara v. Keyser, No. 19-CV-7776, 2020 WL 3127820, at *4 (S.D.N.Y. June 12, 2020).

The Supreme Court has also suggested that there may be an exception to the in-custody requirement where a defendant obtains "compelling evidence that he is actually innocent of the crime for which he was convicted, . . . which he could not have uncovered in a timely manner." Lackawanna Cnty. Dist. Att'y, 532 U.S. at 405.  The viability of this exception is unclear.  See Calaff, 714 F. App'x at 50.  Even assuming that this exception is theoretically available, Payne cannot benefit from this exception because Payne has not established that "he could not have uncovered [this evidence] in a timely manner." Lackawanna Cnty. Dist. Att'y, 532 U.S. 394 at

16

405.  Payne's purported newly discovered evidence about the closure of the Nassau County crime lab could have been uncovered during his 2012 criminal case and certainly before his sentence for this conviction ended on in November 2015.[10]  See Hamm v. Comm'r, Alabama Dep't of Corr., 620 F. App'x 752, 770 (11th Cir. 2015) (finding that petitioner could not qualify for this exception to the in custody requirement because his purported evidence of actual innocence consisted of witness recantations and other eye-witness testimony "that was all theoretically available" to petitioner previously and finding petitioner's cursory statement that he "'exercised due diligence in finding this evidence and presenting it'" failed to explain how petitioner's "waiting fourteen years after his [prior] convictions to 'discover' and present this evidence satisfies any meaning of the word 'diligent'").  Payne even admits that he was able to find this information with a Google search.

Additionally, as explained infra, Plaintiff does not have a meritorious actual innocence claim.  Accordingly, the Court does not have jurisdiction to hear Payne's petition regarding his 2012 conviction as he is no longer in custody pursuant to that conviction and no potential exceptions are applicable.

### 3. Timeliness

The Second Petition is also time-barred.

    *i. The Statute of Limitations Began to Run in 2012 and Expired in 2013.*

AEDPA has a one-year statute of limitations, which runs from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[10]  Payne's attorney was surely already aware of crime lab's closure during the pendency of the 2012 criminal case. The crime lab's closure was well publicized in both the press and in the Inspector General's report.

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C.A. § 2244(d)(1).

The Second Petition is not timely under any of these provisions.

Under 28 U.S.C. § 2244(d)(1)(A), the one-year statute of limitations period runs from the date on which the state criminal judgment becomes final.  See 28 U.S.C. § 2244(d)(1)(A).  Here, after being sentenced in 2012, Payne did not file a direct appeal within the thirty (30) days prescribed by CPL § 460.10(1)(a) nor did Payne seek to file a late appeal within the one-year period allowed by CPL § 460.30.  Therefore, Petitioner's judgment became final thirty days after it was entered.  Id.; CPL § 460.10(1)(a).  Thus, under § 2244(d)(1)(A), the statute of limitations for Payne's habeas corpus petition began running in 2012 and expired one year later in 2013.

Section § 2244(d)(1)(B) is not applicable.  Payne's conclusory claims of fraud and misrepresentation by the prosecution—which appear to be based on the prosecution's purported failure to reveal the closure of the Nassau County crime lab—are insufficient for Payne invoke § 2244(d)(1)(B).

Section 2244(d)(1)(C) is clearly inapplicable to this case, which does not involve a newly recognized constitutional right.

Section 2244(d)(1)(D)—which keys the start of the statute of limitations to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"—also does not render Payne's Second Petition timely.  While Payne suggests that he first learned about the closure of the Nassau County crime lab in 2020, Payne

could have discovered that fact through the exercise of due diligence in 2012 and certainly well before 2020.  Accordingly, Payne's claims are not timely under § 2254(d)(1)(D).

ii.  Statutory and Equitable Tolling Do Not Apply

Section 2244(d)(2) of AEDPA tolls the statute of limitations during the time period "when a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim."  This provision, however, does not help Payne because AEDPA's one-year statute of limitation had already run by the time he filed his 2020 motion for post-conviction relief in state court and, under § 2244(d)(2), such a motion in state court does not restart AEDPA's one-year statute of limitations.   See White v. LaClair, No. 19-CV-1283, 2021 WL 200857, at *9 n.13 (E.D.N.Y. Jan. 19, 2021) (citing Doe v. Menefee, 391 F.3d 147, 154 (2d Cir. 2004)).

While AEDPA's statute of limitations is subject to equitable tolling, Payne is not entitled to equitable tolling.

Under AEDPA, equitable tolling is available only if a Petitioner "shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing."   Holland v. Florida, 560 U.S. 631, 649 (2010) (internal quotations omitted).  As the Second Circuit has explained, the limitations period will only be tolled in rare and exceptional circumstances where a petitioner "demonstrate[s] a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the petitioner, acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances."  Valverde v. Stinson, 224 F.3d 129, 134 (2d Cir. 2000).

Payne's submissions do not establish that an extraordinary circumstance existed or that he

19

acted diligently to warrant equitable tolling.

      iii.  <u>Actual Innocence</u>

Payne also advances a conclusory claim of "actual innocence."  "Actual innocence"  is an equitable exception to the AEDPA's statute of limitations.  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 392-93 (2013).  In order to rely on "actual innocence" to save a time-barred claim, the claim of actual innocence "must be supported with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence- that was not presented at trial."  <u>Lopez v. Miller</u>, 915 F. Supp. 2d 373, 399-400 (E.D.N.Y. 2013) (internal quotation omitted).  A petitioner "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House v. Bell</u>, 547 U.S. 518, 536–37 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298 (1995); <u>Rivas v. Fischer</u>, 687 F.3d 514, 541 (2d Cir. 2012) ("[T]he petitioner must demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt—or to remove the double negative, that more likely than not any reasonable juror would have reasonable doubt.") (citation and internal quotation marks omitted).

Payne's claim of actual innocence is meritless.

As an initial matter, Payne pled guilty to this charge.  That guilty plea undermines his claim of actual innocence.  <u>See</u> <u>Horton v. Recktenwald</u>, No. 15-CV-843, 2017 WL 2957826, at *2 (W.D.N.Y. July 11, 2017) (finding that petitioner's guilty plea was "a factor that militates strongly against crediting his assertion of actual innocence claim"); <u>Johnson v. Medina</u>, 547 F. App'x 880, 885 (10th Cir. 2013) ("[Petitioner's] plea of guilty simply undermines his claim that another individual committed the crime to which he pled guilty.").

Additionally, Payne's proof of his purported innocence is clearly insufficient to establish

that he is actually innocent.  In his Second Petition, Payne—who pled guilty—contends that because the Nassau County crime lab had been closed, the substances at issue in his case were, in fact, never tested and, thus, the prosecution actually had no evidence that these substances were actually cocaine.  (Pet. ¶¶ 28. 47.)  However, the January 2012 test conducted by NMS disposes of the actual innocence theory that Payne advanced in the Second Petition.  In response to this proof, Payne's reply papers shift gears and advance two new arguments, which are still both meritless.  First, Payne argues, unconvincingly, that the NMS test actually does not pertain to the charge for which he pled guilty pursuant to his agreed-upon plea bargain.  (ECF No. 11 at 7–8.)  Second, Payne insists that the two types of tests used by NMS could not be used to convict him under New York law.  This argument is meritless.  As an initial matter, the positive NMS test is certainly not proof of Payne's innocence.  Moreover, contrary to Payne's claim, the NMS test could have been used at a trial to convict him under New York law.  People v. Branton, 67 A.D.2d 664 (N.Y. App. Div. 2d Dep't 1979) does not—as Payne suggests—stand for the proposition that "chromatographic analysis" is incompetent evidence to prove that a substance is an illegal drug.  Rather, Branton found that the specific test performed in that case was insufficient to establish that the substance the defendant sold was, in fact, heroin because the substance was compared to a sample that was merely presumed to be heroin, but which had not actually been independently verified to be heroin.  It is also notable that, in the wake of the Nassau County crime lab's closure, New York state courts have relied on NMS tests as credible evidence to establish that a substance is, in fact, cocaine.  See People v. McCants, 32 Misc. 3d 1242(A), 938 N.Y.S.2d 229 (Sup. Ct. 2011) (relying—in case involving a test performed by the Nassau County crime lab prior to its closure—on a subsequent test by NMS which confirmed the substance at issue was cocaine).

Thus, Payne's actual innocence claim is utterly meritless.[11]

## A.  The Third Petition is Denied

Payne's Third Petition must also be dismissed because it is untimely and because he is not in custody pursuant to the 2009 robbery conviction that he challenges in the Third Petition.  Given the Court lacks jurisdiction and the petition is clearly time-barred, it is unnecessary to address the merits of Payne's underlying claims.

In analyzing Payne's Second Petition, the Court laid out the relevant law concerning both "in custody" requirement and the timeliness of petitions under AEDPA.  It is unnecessary to repeat the relevant legal standards here.

### 1.  Background

On January 27, 2009, Payne pled guilty to one count of second-degree robbery as part of a negotiated plea bargain.  (Second Leiter Aff. ¶ 7; Third Pet., Ex. 4.)  During his plea allocution, Payne acknowledged his satisfaction with his attorney's representation, asserted that he was voluntarily pleading guilty, understood the plea agreement, and confessed his role in the robbery. (Third Pet., Ex. 4..)  Payne admitted that he and another individual took the victim to an ATM and forced him to withdraw money.  (Id. at 27–29.)

On March 9, 2009, Payne was sentenced to two-and-one-half years' incarceration to be followed by two years' post-release supervision.  (Second Leiter Aff. ¶ 8.)

In the Third Petition, Payne faults his attorney for not investigating the case and insists that, if his attorney had investigated the case, he would have discovered that: (1) Payne was cleared

---

[11] Because the Court finds that the Second Petition must be dismissed on the grounds that it is time-barred and that Payne is not in custody pursuant to the 2012 conviction, the Court does not reach the merits of Payne's claims in the Second Petition.  Nevertheless, based on the analysis above, it is clear that the underlying claims in the Second Petition—which are based on the irrelevant fact of the Nassau County crime lab's closure—are meritless.

of being guilty by his co-defendant, who actually committed the robbery; (2) the prosecution never conducted any identification procedure and, yet, falsely stated that the victim had identified defendant; and (3) his waiver of indictment was allegedly invalid because it did failed to identify the charges against Payne.

In support of his claims, Payne's petition relies on a February 19, 2008 letter his attorney sent to the prosecutor.  The letter states that Payne's attorney "advised co-counsel that his client is stating that Mr. Payne was not involved in the commission of the crime charged."  (Third Pet., Ex. 8.)  The letter asked the prosecutor to review any video from the bank, which counsel claimed would show the "complaining witness and the co-defendant," but not Mr. Payne.  (Id.)

In support of his claim about the identification issue, Payne points out that, in the waiver of indictment Payne signed on January 27, 2009, the prosecution represented that it "expected to introduce testimony identifying the defendant" as a perpetrator of the crime and that this "testimony will be given by a witness (witnesses) who has previously identified the defendant." (Third Pet., Ex. 1 at 4.)  In his Third Petition, Payne alleges that this representation was false and that the prosecution never conducted any identification procedure.  (Third Pet. ¶ 31.)  Payne, however, has not provided any actual evidence in support of this allegation.

The Third Petition does not identify when, or how, Payne learned about:  (1) the February 2008 letter; (2) the purported fact that the prosecution never conducted any identification procedure; or (3) the purported deficiency in his waiver of indictment.  The Third Petition simply asserts, in conclusory fashion, that Payne "had no knowledge of the proof of the miscarriage of justice."[12]  (Third Pet. ¶ 63.)

_____

[12]  Similar to his Second Petition, Payne's Third Petition recounts that he requested information from the District Attorney's Office and the Nassau County Court concerning his 2009 criminal case.  At some point—apparently after his 2019 convictions—Payne submitted a FOIL request to the Nassau County District Attorney's Office about his

**2.  The In-Custody Requirement is Not Met**

As a threshold matter, Payne is not "in custody" for his 2009 conviction because his prison sentence ended in 2011 and his post-release supervision ended in 2013.  The fact this 2009 conviction was used to enhance his 2019 sentence does not render Payne in custody for purposes of challenging his 2009 conviction.

While Payne claims that he is actually innocent, Payne cannot rely on an actual innocence exception to the in-custody requirement, even assuming that such an exception exists.

Payne's Third Petition has clearly not established that "he could not have uncovered . . . in a timely manner" the February 2008 letter, the purported evidence about the identification procedure, or the allegedly deficient waiver of indictment.  Lackawanna Cnty. Dist. Att'y, 532 U.S. at 405.  Payne has failed to establish that he acted diligently to obtain this evidence.  See Hamm, 620 F. App'x at 770.  Additionally, as explained infra, Plaintiff does not have a meritorious actual innocence claim.

Accordingly, the Court does not have jurisdiction to hear Payne's petition regarding his 2009 conviction as he is no longer in custody pursuant to that conviction and no potential exceptions are applicable.

**3.  Timeliness**

The Third Petition is also time-barred and neither tolling or the actual innocence exception

---

2009 conviction.  (Third Pet. ¶ 20.)  He received a response to this request in November 2020, which simply stated that the District Attorney's Office was reviewing the files for this case and anticipated providing information about what documents were available within the next twenty days.  (Id. ¶ 20.)  The record does not include any subsequent correspondence concerning this FOIL request.  At some point—apparently in 2020—Payne also wrote to the clerk of the Nassau County Court seeking information about his 2009 criminal case.  (Third Pet. ¶ 21; id., Ex. 7.)  He received a response on December 31, 2020, which indicated that the court file did not contains any demands from defense counsel for discovery or any request from defense counsel for a private investigator.  (Third Pet., Ex. 7.)

The Third Petition does not connect the requests and responses cited above to the February 2008 letter from defense counsel or the purported issues with the identification by victim and the waiver of indictment.

to AEDPA's statute of limitations saves Payne's claims.

Payne filed the Third Petition on April 21, 2022, approximately <u>thirteen years</u> after his state court criminal conviction became final on April 8, 2009.[13]  Payne did not appeal his judgment of conviction nor did he seek to file a late notice of appeal within the allotted time-period after his sentencing which occurred on March 9, 2009.  Therefore, under § 2244(d)(1)(a), the statute of limitations for Payne's habeas corpus petition began running on April 8, 2009 and expired one year later on April 8, 2010.

Section § 2244(d)(1)(B) is not applicable.  Payne's conclusory claims of fraud and misrepresentation by the prosecution are insufficient for Payne invoke § 2244(d)(1)(B).

Section 2244(d)(1)(C) is clearly inapplicable to this case, which does not involve a newly recognized constitutional right.

Section 2244(d)(1)(D)—which keys the start of the statute of limitations to "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence"—also does not render Payne's Third Petition timely.  As explained earlier, Payne never even identifies when he learned about February 2008 letter and the purported evidence about the identification issue.  Payne had to establish that this evidence could not have been discovered years before the filing of his petition through exercise of due diligence.  Payne has clearly failed to do so.  Payne cannot possibly rely on § 2244(d)(1)(D) to render his claim timely.

As with Payne's Second Petition, his belated § 440.10 motion which he filed in 2021 does not restart the one-year statute of limitations and he has not established that he is entitled to

---

[13]   The Court notes that Petitioner states his conviction became final on an earlier date in January 2009. The Respondent asserts that the conviction become final on April 9, 2009.  Under either date, the Petition is untimely.

25

equitable tolling.

Payne's attempts to invoke the actual innocence exception for AEDPA's statute of limitations are meritless.  As an initial matter, Payne's actual innocence claims fail because he has not pointed the Court to any "new evidence" and never claims that he was unaware of:  (1) defense counsel's February 2008 letter (or the underlying alleged statements by his co-defendant's counsel and his co-defendant referenced in the letter); and (2) the purported absence of an identification procedure.  As Payne has not pointed to any "new" evidence, his actual innocence claim fails.

Payne's actual innocence claim also fails on the merits.  As with his 2012 conviction, Payne's guilty plea undermines his actual innocence claim. See Horton, 2017 WL 2957826, at *2; Johnson, 547 F. App'x at 885.

In the face of his guilty plea, the February 2008 letter is patently insufficient to establish Payne's actual innocence.  The February 2008 letter includes a third-hand account of what Payne's co-defendant allegedly told his lawyer who then allegedly relayed the co-defendant's statement to Payne's attorney.  This is not reliable evidence that would have made it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." House, 547 U.S. at 536–37.  The record contains no sworn statements from Payne's co-defendant or anyone with direct knowledge of this purported exculpatory statement.  As Justice O'Brien persuasively explained in rejecting the actual innocence claim Payne raised in his § 440.10 motion:  "other than this unsupported speculation that the co-defendant was exonerating him, the defendant offers no other sworn allegations of fact or exculpatory evidence that he was innocent."  (Third Pet., Ex. 3 at 4.)

Payne's other claims are also patently insufficient to establish actual innocence.  He has not offered any actual evidence about the purported absence of an identification by the victim and,

26

in any event, Payne pled guilty.  Payne's claim about the waiver of indictment does not even concern actual innocence and, as Justice O'Brien explained, this argument is substantively meritless in any event.  (Id. at 6.)    Finally, to the extent that Payne claims that he is entitled to hearing on his claim of "actual innocence" to uncover additional evidence in support of his claim, he has not shown that he acted diligently in seeking this evidence or that there is "substantial support" for his actual innocence claim. See Hamm, 620 F. App'x at 770.

### III.   CONCLUSION

For the reasons set forth above, Payne's Petitions are DENIED and Respondent's Motions to Dismiss are GRANTED.  The Clerk is directed to close the above-captioned cases.

**SO ORDERED.**

Dated:  August 9, 2022
         Central Islip, New York

                                        _____/s/ (JMA)_____
                                        JOAN M. AZRACK
                                        UNITED STATES DISTRICT JUDGE